IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PATSY NAOMI SAKUMA, | CIVIL NO. 16-00274 DKW-KJM |
| Plaintiff, | ORDER GRANTING (1) PORTER MCGUIRE KIAKONA & CHOW, LLP'S MOTION TO DISMISS; (2) JAMES S. KOMETANI'S MOTION TO DISMISS; (3) FIRST HAWAIIAN BANK AND WATANABE ING LLP'S MOTION TO DISMISS; AND (4) MILTON M. MOTOOKA, MOTOOKA YAMAMOTO & REVERE, LLP'S MOTION TO DISMISS |
| vs. | |
| ASSOCIATION OF APARTMENT OWNERS OF THE TROPICS AT WAIKELE, *et al.*, | |
| Defendants. | |

**ORDER GRANTING (1) PORTER MCGUIRE KIAKONA & CHOW, LLP'S MOTION TO DISMISS; (2) JAMES S. KOMETANI'S MOTION TO DISMISS; (3) FIRST HAWAIIAN BANK AND WATANABE ING LLP'S MOTION TO DISMISS; AND (4) MILTON M. MOTOOKA, <u>MOTOOKA YAMAMOTO & REVERE, LLP'S MOTION TO DISMISS</u>**

## <u>INTRODUCTION</u>

In a continuing effort to collaterally attack the state court judicial foreclosure of her property, Plaintiff Patsy Naomi Sakuma again brings claims against the entities and individuals responsible for bringing that foreclosure about.   Although her First Amended Complaint is at times difficult to decipher, Sakuma is evidently

attempting to relitigate the prior state court foreclosure of her property and related actions, which both state and federal courts have already addressed, several times over.   Because this Court is without the authority to re-open Sakuma's previously closed cases, and because her current claims are barred by the *Rooker-Feldman* doctrine, defendants' motions to dismiss are GRANTED.

## BACKGROUND

## I.   Overview Of Prior Litigation

On or about December 15, 1998, Sakuma entered into a Real Property Mortgage and Financing Statement ("Mortgage") and Note to buy her home in the Tropics at Waikele, located at 94-1016 D Maiau Street, Waipahu, Hawaii 96797. The Mortgage was recorded in the Bureau of Conveyances as Document No. 98-194762 on December 29, 1998.   FAC ¶ 53.

Sakuma has spent the last fifteen years litigating with various defendants regarding the property.[1]   Excluding the present action, there have been three federal lawsuits since 2001 in which Sakuma and the Tropics entities have opposed one another, including *Sakuma v. AOAO Tropics at Waikele*, Civil No. 01-CV-00556 DAE BMK; *Tropics at Waikele v. Sakuma*, Civil No. 02-00147 HG-LEK ("2002 Removed Action"); and *Sakuma v. AOAO Tropics at Waikele*, Civil No. 08-00502

---

[1]Sakuma is an attorney licensed in the State of California, however, she "was unable to pay her state bar dues and her license was suspended for nonpayment from on or about September 16, 2005 to on or about October 8, 2013."   FAC ¶ 50.

HG-KSC.   There have been three additional state lawsuits, including *AOAO of Tropics at Waikele v. Sakuma*, 1RC-05-1-006232; *Association of Homeowners of Tropics at Waikele v. Sakuma et al.*, 1CC 07-1-00487 ("2007 Foreclosure Action"); and *First Hawaiian Bank v. Sakuma et al.,* 1CC 11-1-001943.

The Court briefly addresses this related prior litigation where pertinent to Sakuma's current action.

### A.   2001 Federal Action

Sakuma sued the AOAO Tropics at Waikele ("AOAO"); Love Yamamoto & Motooka; and Hawaiiana Management Company over a dispute relating to the property, purportedly for "handicap discrimination" under the Fair Housing Amendments of 1988, 42 U.S.C. § 3600 *et seq*. and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131.   *See* FAC Ex. GG (Docket Sheet in *Sakuma v. AOAO Tropics at Waikele*, Civil No. 01-CV-00556 DAE-BMK).   The 2001 federal action was dismissed by stipulation and order on September 20, 2002 (Dkt. No. 53 in 01-CV-00556) together with another removed action (02-CV-00147 HG-LEK).   Sakuma thereafter moved to amend the judgment (Dkt. Nos. 55 & 56 in 01-CV-00556).   The district court denied that motion and Sakuma filed a notice of appeal.   (Dkt. Nos. 68 & 69 in 01-CV-00556).   After the Ninth Circuit affirmed the district court (Dkt. No. 74 in 01-CV-00556), Sakuma filed another motion for relief from final judgment in the district court on January 26, 2005 (Dkt. No. 76 in

3

01-CV-00556).   The district court again denied Sakuma's motion (Dkt. No. 93 in 01-CV-00556) and ordered Sakuma to show cause why sanctions should not be imposed (Dkt. No. 94 in 01-CV-00556).   Sakuma appealed the district court's order denying her motion for relief from final judgment (Dkt. No. 103 in 01-CV-00556).

On October 31, 2005, the district court imposed sanctions against Sakuma pursuant to 28 U.S.C. § 1927 and the court's inherent power, and ordered her to pay to defendants' attorneys their fees incurred as a result of responding to Sakuma's motions (Dkt. Nos. 119 & 130 in 01-CV-00556).   Sakuma appealed the award of attorneys' fees and costs on May 31, 2006 (Dkt. No. 131 in 01-CV-00556).   The Ninth Circuit affirmed the district court's ruling on December 12, 2006 (Dkt. No. 145 in 01-CV-00556).   On June 25, 2007, the district court issued an order finding Sakuma in civil contempt for failure to pay the attorneys' fees and costs as previously ordered.   (Dkt. No. 151 in 01-CV-00556).   Sakuma appealed the contempt order on July 24, 2007 (Dkt. No. 159 in 01-CV-00556), which was then dismissed by the Ninth Circuit on January 14, 2009 (Dkt. No. 198 in 01-CV-00556).

On September 5, 2007, Sakuma once again filed a motion for relief from the judgment and final order, and a motion for sanctions against defendants, their attorneys, and the attorneys' law firms (Dkt. No. 169 in 01-CV-00556).   On September 27, 2007, the district court denied Sakuma's motion and entered a contempt and pre-filing screening order, directing as follows:

that Plaintiff, Patsy N. Sakuma, is permanently enjoined from filing motions in the instant case, CV NO. 01-00556 DAE/BMK, except to oppose the instant order of pre-filing screening, with good faith arguments, within 10 days of its filing.   Subject to that limited exception, the Court shall screen all of Plaintiff's attempted filings in the instant case to determine whether they merit further review and whether they are proper for filing. ORDERS that Plaintiff must immediately comply with the Court's Contempt Order. . . . Upon non-compliance, Defendants may move the Court to order Plaintiff into custody until she complies or until further order of the Court, pursuant to the Contempt Order.   Plaintiff may respond to such a motion, in good faith, if made.

Dkt. No. 172 in 01-CV-00556.   Sakuma thereafter filed a motion for

reconsideration, which was denied (Dkt. Nos. 173 & 181 in 01-CV-00556), and a

notice of appeal (Dkt. Nos. 183 & 186 in 01-CV-00556).   The Ninth Circuit

affirmed on January 14, 2009 (Dkt. No. 198 in 01-CV-00556).

### B.   2002 Removed Action

In 2001, the AOAO sued Sakuma in state court (1RC-01-5514), which

Sakuma removed to this court on March 8, 2002, entitled *Tropics at Waikele v.*

*Sakuma*, Civil No. 02-00147 HG-LEK ("2002 Removed Action").   The case was

dismissed with prejudice by stipulation and order on October 1, 2002 (Dkt. No. 10 in

02-CV-00147).   Sakuma filed a notice of appeal on March 13, 2003, and the Ninth

Circuit dismissed the appeal on April 10, 2003 (Dkt. Nos. 11 & 15 in 02-CV-00147).

The 2002 Removed Action was globally settled with the 2001 Federal Action,

01-CV-00556.   According to Sakuma, "because of material terms in conflict in the

written Release and the oral settlement, Sakuma did not sign the Release."   FAC

¶ 58.   She now alleges:

> On or about October 1, 2002 the Removed Action was deemed
> settled pursuant to a Stipulation Of Dismissal with prejudice of
> all claims and parties as to the Complaint filed on August 16,
> 2001 as Civil No. 1RCOl-5514, which stipulation Sakuma
> refused to sign and by order of Judge Helen [Gillmor] the clerk
> of the court signed for Sakuma and for the release of the 2001
> Lien, as part of the global settlement with the Main Federal
> Action.

FAC ¶ 59.

Thereafter, the AOAO recorded a 2005 Notice of Lien for Unpaid

Assessments ("2005 Lien") at the Bureau of Conveyances ("BOC") as Doc.

2005-0789021, *see* FAC Ex. Q.   In 2005, the AOAO filed an action against Sakuma

for unpaid homeowners fees, *AOAO of Tropics at Waikele v. Sakuma*, 1RC-05-1-

006232, *see* FAC Ex. P, and judgment was granted in its favor on March 1, 2007.

FAC ¶ 63.

### C.   2007 Foreclosure Action

On August 17, 2007, the Association of Condominium Homeowners of

Tropics at Waikele ("AOCH") filed a judicial foreclosure action against Sakuma in

the First Circuit Court, Civ. No. 07-1-1487 ("2007 Foreclosure Action").   The 2007

Foreclosure Action generated at least three appeals: CAAP No. 11-0000054,

12-0000145 and 12-0000870.   FAC ¶¶ 64-65.   On June 10, 2008, the Circuit Court

entered a decree of foreclosure ("2008 Decree of Foreclosure"), and on January 22, 2009, denied Sakuma's October 6, 2008 motion for reconsideration of the court's September 23, 2008 order granting a motion to sell without open house.   The Circuit Court thereafter granted the motion to confirm sale, and denied Sakuma's motion for reconsideration on February 10, 2011.   Sakuma's subsequent appeals to the Intermediate Court of Appeals ("ICA") and Hawaii Supreme Court were dismissed or affirmed in favor of the AOAO and/or AOCH.   Most recently, on January 21, 2016, the ICA issued a summary disposition order dismissing Sakuma's third appeal as moot, and denied Sakuma's motion for reconsideration on February 1, 2016.   The ICA entered judgment on appeal on July 22, 2016 in CAAP No. 12-000870.

### D.    2008 Federal Action

On November 5, 2008, Sakuma filed an independent action in this district court, Civil No. 08-00502 HG-LEK, seeking "to reopen the [2002] Removed Action based on further fraud in AOCH's attorney."   FAC ¶ 69.   Sakuma filed a Complaint for Unlawful Handicap Retaliation and Harassment; Injunction; and TRO Application; naming as defendants the AOAO, Circuit Court Judge Karen N. Blondin, and Commissioner James S. Kometani.   FAC Ex. FF.   The district court denied Sakuma's request for temporary restraining order seeking to halt the foreclosure of the property ("TRO") and motion for reconsideration (Dkt. Nos. 23,

33 & 39 in 08-CV-502).   On January 13, 2009, the court granted Judge Blondin's

motion to dismiss on the basis of judicial immunity (Dkt. No. 15 in 08-CV-502).

On September 16, 2009, the district court denied Sakuma's motion for

summary judgment and dismissed the case for lack of jurisdiction, finding that:

> The prayer for relief requested in the Complaint is that the
> Court stop the foreclosure of Plaintiff's property at the Tropics at
> Waikele.   The foreclosure, however, has already occurred, and
> the state court has confirmed the sale to the winning bidder.
>
> The injunctive relief requested by the Complaint must be
> denied as moot, because the sale of Plaintiff's property has
> already taken place.   *See Northern Alaska Environmental
> Center v. Hodel*, 803 F.2d 466, 469 n.3 (9th Cir. 1986); *Western
> Addition Community Organization v. Alioto*, 514 F.2d 542, 544
> n.2 (9th Cir. 1975).   The Court no longer has jurisdiction over
> the allegations raised in the Complaint, and for this reason,
> Plaintiff's action must be dismissed.

Dkt. No. 85 in 08-CV-502 at 7.   The court denied Sakuma's motion for

reconsideration (Dkt. No. 91 in 08-CV-502), and the Ninth Circuit affirmed the

district court's dismissal of the action on October 5, 2010 (Dkt. No. 102 in

08-CV-502).

After the Ninth Circuit affirmed, on November 19, 2011, Sakuma filed a

Motion to Vacate the court's prior order of dismissal (Dkt. No. 105 in 08-CV-502),

which the district court denied initially on January 31, 2012 and denied once more

upon Sakuma's motion for reconsideration (Dkt. Nos. 110 & 112 in 08-CV-502).

Sakuma once more filed a notice of appeal (Dkt. No. 113 in 08-CV-502).   The

Ninth Circuit summarily affirmed the district court's orders denying Sakuma's Motion to Vacate and to reconsider that denial (Dkt. No. 119 in 08-CV-502).

## II.   **Current Action**

Sakuma filed her one-hundred page First Amended Complaint in the present case "as an independent action in lieu of a motion to reopen for fraud on the court under [FRCP] Rule 60(d)(3) her prior federal civil cases to enjoin and void the 2007 State Foreclosure Action against her, and the 2002 Removed Action[.]"   FAC at 2. She alleges federal jurisdiction "to vacate a settlement of its own case for fraudulent inducement . . . to reopen the Removed Action CV:02-00147 HG:LEK for fraud on the court . . . by the defendant [AOAO] disguised as the Association Of Apartment Owners Of (without "The") Tropics At Waikele ("Tropics") in the Removed Action as AOAO disguised as Association of Condominium Homeowners of Tropics At Waikele ("AOCH") in the 2007 Foreclosure Action and Tropics in the 2008 Related Federal Action."   FAC ¶ 2.

She also asserts jurisdiction "over the 2007 Foreclosure Action Civ. No. 07-1487 filed by AOCH against Sakuma and which Sakuma attempted to enjoin in the 2008 Federal Action against AOCH under all three (3) exceptions to the Anti-Injunction Act . . . and now also because these actions are not moot even after the completed and wrongful third foreclosure sale of Sakuma's Tropics Home by the Commissioner James S. Kometani[.]"   FAC ¶ 4.   According to Sakuma, she "was

prejudiced because she lost her right again to remove the 2007 Foreclosure to this Court like she had done with the [2002] Removed Action.   With respect, the 1st Circuit effectively aided and abetted the AOAO disguised as AOCH to avoid possible sanctions in the 2008 Federal Action with this Court for fraudulently inducing the global settlement when it filed the 2001 State Assumpsit Action disguised as Tropics, a[] non-existing entity with no legal authority to file the 2001 State Assumpsit Action and record the 2001 Lien[.]"   FAC ¶ 14.

Moreover, "this Court retained jurisdiction because any untimeliness by Sakuma should be considered in light of the courts here failing to exercise their duty to sua sponte raise the lack of subject-matter jurisdiction if the parties fail to do so because any judgment or order rendered is void, not voidable."   FAC ¶ 24.

Sakuma alleges the following causes of action:

(1) unfair and deceptive acts or practices in violation of Hawaii Revised Statutes ("HRS") § 480-2 based on the following: "2001 State Assumpsit Action/Removed Action – False Name," alleging a false chain of title based on the omission of "the" from the AOAO's name; "Defective 2001 Exhibit A and Void Ab Initio 2001 Lien," alleging fraud based on the legal title description in Exhibit A attached to Tropic's 2001 Lien; "Void Ab Initio 2005 State Assumpsit Action," alleging fraud based on the legal title description in Exhibit A attached to a 2005 Lien and violation of HRS § 480-2; "2007 State

Foreclosure Action," alleging attempted fraud, slander of title in violation of HRS § 657-4, and forgery in violation of HRS § 708-852(1); "Related 2008 Federal Civil Action; TRO Application," alleging wrongful foreclosure and conversion of her property.   *See* FAC ¶¶ 88-160.

(2) Racketeering Influenced Corrupt Organizations ("RICO"), 18 U.S.C. § 1964(c), alleging that Defendants operated an association-in-fact enterprise (the "AOCH Enterprise") for the "purpose of abusing the judicial process" and "based on its diabolical sinister plan that the 'judicial process' once in motion would work to realizing AOCH[] Enterprise's goals because of the courts' reluctance to overturn a mistake made by the lower court or itself based on maintaining the integrity of the judiciary in the public's eyes." *See* FAC ¶¶ 161, 165.

(3) Conspiracy to Commit Civil RICO, alleging that Defendants conspired with each other in furtherance of the AOCH Enterprise's goals. *See* FAC ¶¶ 177-79.

(4) Hawaii Civil RICO, HRS §§ 842-2(3) and 657-1(4), alleging in the alternative, the same contentions raised in her Third and Fourth causes of action, and asserting that she was ignorant of the basis for her claim because "the courts, including this Court, did not sua sponte raise the lack of subject matter jurisdiction due to Defective 2001 and 2005 Exhibit A and false name

11

as they are required by law to do so since all orders or judgments rendered would be void."   FAC ¶ 181.

(5) Conversion, HRS § 657-1(4), based on wrongful foreclosure resulting in the conversion of her and her tenants' property.   *See* FAC ¶¶ 184-87.

(6) Abuse of Process, HRS Chapters 667, 514A and 514B, alleging that Defendants abused the judicial foreclosure process.   *See* FAC ¶¶ 188-91.

(7) Wrongful Foreclosure, based on the use of the allegedly fraudulent 2005 Exhibit A and 2005 Lien.   *See* FAC ¶¶ 192-96

(8) Unjust Enrichment, *see* FAC ¶¶ 197-98.

Among other relief sought, Sakuma asks the Court to:

> Void that Release and Stipulation of Dismissal of the [2002] Removed Action based on HRS § 480-24 and sua sponte void the Stipulation of Dismissal of the Main Action, overturn Judge Ezra's Order Finding Sakuma A Vexatious Litigant and September 27, 2007 Order For Prefiling Screening, order AOAO to make restitution of the $1,450 attorneys' fees and costs Sakuma paid or be held in contempt of court by then Chief Judge David Alan Ezra and recommend that the Ninth Circuit investigate its files in Appeal Nos. 03-15522 to see if the fifty (50) copies sent in Sakuma's 2003 Petition for Rehearing and En Banc Petition for Appeal No. 03-15522 of the disputed August 29, 2002 letter Sakuma wrote to Magistrate Judge Barry M. Kurren shows the date of "08/23/02" not the suspected switched date of 07/23/02 when Sakuma requested another hearing in CV:01-00556 DAE:BMK and so this Court's file in CV 01-00556DAEBMK showing the date of 07/23/07 in Sakuma's August 29, 2002 [sic] has been tampered with[.]

12

FAC at 98-99.   That is, Sakuma seeks to directly and indirectly challenge the final decisions of the Hawaii state courts and of other judges in this district court.

Defendants Porter McGuire Kiakona & Chow, LLP; Commissioner James S. Kometani; First Hawaiian Bank ("FHB") and Watanabe Ing LLP; Milton M. Motooka and Motooka Yamamoto & Revere, LLP seek dismissal of Sakuma's First Amended Complaint.   Following the hearing on the instant motions, Sakuma filed a Notice of Appeal of the Court's "oral announcement of dismissing the above-entitled action at the September 23, 2016 Hearing[.]"   Notice of Appeal (Dkt. No. 88).

## STANDARD OF REVIEW

## I.   Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction.   A court may determine jurisdiction on a motion to dismiss for under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case."   *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).   A plaintiff has the burden of proving that subject-matter jurisdiction does in fact exist. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

A challenge to the Court's subject-matter jurisdiction may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).   In a facial attack, the party challenging jurisdiction argues that the allegations contained in a complaint are insufficient "on their face" to invoke federal jurisdiction.   *Id.*   A facial challenge, therefore, mirrors a traditional motion to dismiss analysis.   The Court must take all allegations contained in the pleading "to be true and draw all reasonable inferences in [its] favor."   *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## II.   Failure To State A Claim

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted.   Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   *Id.*   Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555).   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

14

the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

Courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

## DISCUSSION

### I.    The Complaint Does Not Establish Subject Matter Jurisdiction

"A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). At the pleading stage, a plaintiff must allege sufficient facts to show a proper basis for the Court to assert subject matter

jurisdiction over the action.   *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006); Fed. R. Civ. P. 8(a)(1).   Sakuma does not meet that burden here.

Sakuma seeks, in part, a judgment from this Court that there was at least one illegitimate lien on her real property (the 2005 Lien), which would nullify the 2008 Decree of Foreclosure.   Ruling in favor of Sakuma would effectively reverse and void the decisions of the Hawaii state courts.   The Court is without jurisdiction and is barred doing so because of the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine rests upon the principle that federal district courts are without the authority to exercise appellate review of the state judicial process.   *Henrichs v. Valley View Development*, 474 F.3d 609, 613 (9th Cir. 2007). Under the *Rooker-Feldman* doctrine (*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), collectively referred to as *Rooker-Feldman*), "'a losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'"   *Bennett v. Yoshina*, 140 F.3d 1218, 1223 (9th Cir. 1998) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).   The *Rooker-Feldman* doctrine divests federal district courts of jurisdiction to conduct direct reviews of state court judgments even when a federal question is

presented or if the state court decision is challenged as unconstitutional.   Litigants

who believe that a state judicial proceeding has violated their constitutional rights

must appeal that decision through their state courts and then seek review in the

United States Supreme Court.   "*Rooker-Feldman* prohibits a federal district court

from exercising subject matter jurisdiction over a suit that is a de facto appeal from a

state court judgment."   *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir.

2004).

Although there are exceptions to the doctrine, none apply here.   Sakuma

conclusorily alleges fraudulent conduct by various defendants.   Claims for fraud,

wherein plaintiffs argue that fraudulent conduct was "extrinsic" to their state case

and kept them from presenting their claims to the state court, are generally not

barred by *Rooker-Feldman*.   *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141

(9th Cir. 2004).   However, far from being extrinsic to what was before the state

court, the fraud alleged by Sakuma is inextricably intertwined with the merits of the

state case.   *See Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d

1022, 1030 (9th Cir. 2005); *Kougasian*, 359 F.3d at 1141; *see also Pedrina v. Chun*,

906 F. Supp. 1311, 1398 n.7 ("If anything, the evidence provides Plaintiffs a

grounds for challenging the validity of the actions in the state courts.").   Moreover,

Sakuma asserts a legal injury committed by the state courts in the 2007 Foreclosure

Action.   *Rooker-Feldman* bars this Court from reviewing that action, which the

state appellate courts have already done.   *Clark v. Superior Court*, 2013 WL

6057498, at \*2, (N.D. Cal. Nov. 14, 2013); *Khanna v. State Bar of Cal.*, 505 F. Supp.

2d 633, 641 (N.D. Cal. 2007).

Neither can Sakuma now contend that she was unable to make the arguments

she presently asserts in either the underlying state foreclosure action, in her prior

federal actions, or in her myriad appeals.   Her "allegations of . . . fraud are entirely

unsupported and are nothing more than an artful attempt to plead around the

*Rooker-Feldman* bar."   *Copple v. Astrella & Rice, P.C.*, 442 F. Supp. 2d 829, 837

(N.D. Cal. 2006).[2]

In opposition, Sakuma argues that the *Rooker-Feldman* doctrine does not

apply because the United States Supreme Court's decision in *Exxon Mobil Corp. v.*

*Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), allows for concurrent

jurisdiction where a state court judgment is not yet final.[3]   However, at the time

Sakuma filed the First Amended Complaint in the instant matter, the 2008 Decree of

Foreclosure and Judgment was a final judgment under Hawaii law.   *See Beneficial*

---

[2]Although the First Amended Complaint, in part, alleges federal and state statutory and common law violations, Sakuma herself acknowledges that the true goal of the instant case is "to reopen for fraud on the court . . . her prior federal civil cases to enjoin and void the 2007 State Foreclosure Action against her, and the 2002 Removed Action[.]"   FAC at 2.

[3]There do not appear to be any pending proceedings in the related state court appeal.   That is, the state court judgment is final and state court proceedings have terminated.   *See* CAAP-12-0000870 (7/22/16 Judgment on Appeal; 8/9/16 Denial of Extension to File Application for Writ of Certiorari).

*Hawaii, Inc. v. Casey*, 98 Hawai'i 159, 165, 45 P.3d 359, 365 (2002); *Cnty. of Kaua'i v. Girald*, 2015 WL 5884859, at *6 (D. Haw. Oct. 6, 2015) ("Hawai'i case law provides that: '[F]oreclosure cases are bifurcated into two separately appealable parts: (1) the decree of foreclosure and the order of sale, if the order of sale is incorporated within the decree; and (2) all other orders.'   Appeals of foreclosure decrees and their accompanying orders are allowed, even though additional proceedings remain in the circuit court, because of their idiosyncratic nature: a foreclosure decree falls within that small class of orders 'which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'") (citing *Casey*, 98 Hawai'i at 165, 45 P.3d at 365) (some citations omitted)).   Here, the 2008 Decree of Foreclosure and Judgment was entered on June 10, 2008.   Sakuma did not timely appeal within the required period and cannot now seek to challenge a final state court proceeding that is barred by *Rooker-Feldman*.   Accordingly, allegations relating to whether any Tropics entity had a right to foreclose – including whether the foreclosing plaintiff was fraudulently named or was not the true party in interest, or that any Tropics entity fraudulently recorded the underlying 2005 Lien – cannot support Sakuma's enumerated claims for relief (*e.g.*, her RICO, UDAP, abuse of

process claims) without running afoul of *Rooker-Feldman*'s bar on reviewing final decisions that the state courts have already decided.

Sakuma also makes the nonsensical argument that *Rooker-Feldman* does "not bar a federal-court suit raising a claim previously decided by a state court unless the federal suit actually seeks to overturn, as opposed to simply contradict, the state-court judgment."   Sakuma Opp. to FHB Mot. at 6 (Dkt. No. 55).   The Court is unable to coherently respond to this incoherent assertion, except to decline Sakuma's invitation to "simply contradict" any state court judgment implicated in her First Amended Complaint.

To the extent Sakuma argues that the *Rooker-Feldman* doctrine does not apply because this action seeks to "reopen" the 2002 Removed Action or the "2001 State Action" and "2005 State Action," her contentions are wholly without merit. This Court lacks such authority, and Sakuma has not offered any for consideration.[4] In sum, regardless of Sakuma's artful pleading of her claims, the issues presented in

_____

[4]To the extent the First Amended Complaint collaterally attacks the prior federal court judgments, her attempts are barred by the doctrine of res judicata.   *See, e.g., Marshall v. Washington State Bar Ass'n*, 2012 WL 1884680, at *10 (W.D. Wash. May 23, 2012), *aff'd*, 523 F. App'x 451 (9th Cir. 2013) ("Res judicata also bars plaintiffs from recasting their claims under a different theory so that they may sue again.") (citing *Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863, 867 (9th Cir. 1995)).   Even assuming the truth of Sakuma's allegations that the prior federal court judgments, all of which were affirmed multiple times on appeal, were entered by district courts without subject matter jurisdiction, the Court is unpersuaded that it should now re-open those cases in this independent proceeding.   *See* 18A Wright & Miller, *Fed. Prac. & Proc.* § 4428 (2d ed.) ("Today, it is safe to conclude that most federal-court judgments are res judicata notwithstanding a lack of subject-matter jurisdiction.").

the First Amended Complaint are inextricably intertwined with the matters resolved in the 2007 Foreclosure Action and the 2008 Decree of Foreclosure and Judgment. By her own admission, Sakuma seeks to overturn the state Circuit Court and appellate courts' decisions by this lawsuit, which this Court cannot and will not do. The Court finds that it lacks jurisdiction over this action under *Rooker-Feldman*. Accordingly, the defendants' motions to dismiss are granted, and the First Amended Complaint is dismissed.   While the Court acknowledges that pro se complaints are to be liberally construed, and pro se plaintiffs are ordinarily entitled to at least one opportunity to amend a defective complaint, the Court's dismissal in this instance is WITH PREJUDICE.   Given Sakuma's stated intention – that the instant lawsuit represents her attempt to revisit the alleged wrongs committed by various prior state and federal courts – it would be futile to allow amendment.   *See, e.g., Heilman v. Sanchez,* 583 F. App'x 837, 839-40 (9th Cir. 2014) (holding that "the district court did not abuse its discretion by refusing to grant leave to amend because those aspects of the complaint could not be cured by amendment") (citing *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007)).

## II.   Sakuma Fails To Plausibly State A Federal Claim For Relief

As Sakuma's claims are barred by *Rooker-Feldman* and res judicata, the Court need not review all of the other grounds for dismissal identified by Defendants.   However, having considered the parties' other arguments, the Court

notes that, even if it did have jurisdiction, Sakuma's claims would fail for a number of other reasons.   Of particular note, the First Amended Complaint does not state a RICO claim, or any other federal claim conferring this court with federal question subject matter jurisdiction.

The First Amended Complaint implausibly alleges that several defendants operated an association-in-fact enterprise (the "AOCH Enterprise") for the "purpose of abusing the judicial process" and "based on its diabolical sinister plan that the 'judicial process' once in motion would work to realizing AOCH[] Enterprise's goals because of the courts' reluctance to overturn a mistake made by the lower court or itself based on maintaining the integrity of the judiciary in the public's eyes."   FAC ¶¶ 161, 165.

To the extent Sakuma attempts to allege a civil RICO claim, she must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally must establish that (5) the defendant caused injury to plaintiff's business or property."   *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002) (citing 18 U.S.C. §§ 1962(c), 1964(c)); *see* also 18 U.S.C. § 1961.   Although the First Amended Complaint conclusorily alleges several of the elements of a civil RICO claim, Sakuma does not plausibly allege any of these elements.   The conclusory allegations that defendants "associated together" to form an enterprise are insufficient.   *See Boyle v. United States*, 556

U.S. 938, 946 (2009) ("From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.").   Nor does Sakuma sufficiently identify the predicate acts that form the basis of the alleged "scheme of racketeering."   *See Graf v. Peoples*, 2008 WL 4189657, *6 (C.D. Cal. Sept. 4, 2008) (citing *Savage v. Council on American–Islamic Relations, Inc*., 2008 WL 2951281, at *14 (N.D. Cal. July 25, 2008) (finding that a RICO claim was insufficient where plaintiff set forth a "redundant narrative of allegations and conclusions of law, but [made] no attempt to allege what facts are material to his claims under the RICO statute, or what facts are used to support what claims under particular subsections of RICO"); and *Federal Reserve Bank of San Francisco v. HK Systems*, 1997 WL 227955, at *3 (N.D. Cal. Apr. 24, 1997) (finding that a complaint was insufficient for failure to "identify exactly which acts are 'predicate acts' for RICO liability")).

Moreover, Sakuma's purported RICO claim rests on the abuse of judicial process relating to a single judicial foreclosure of a single piece of real property—there is no allegation of racketeering by an enterprise outside of Sakuma's individual property—hence there can be no evidence of an ongoing organization or pattern of racketeering activity, nor can she "show that the

racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).   Under these circumstances, amendment of her RICO and conspiracy to commit RICO claims would be futile.   *See, e.g., Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1203 (C.D. Cal. 2008) (dismissing RICO claim where no other attempted foreclosure or loan collection activities were alleged beyond the individual plaintiff's nor any continuing relationship between the defendants); *Dysart v. BankTrust*, 516 Fed. Appx. 861, 864 (11th Cir. 2013) (dismissing RICO claim where alleged scheme to divest plaintiff of her home could not be repeated and the alleged racketeering activity was related to a single foreclosure).

Where, as here, all federal claims are dismissed before trial, and, indeed, before the onset of discovery, the Court, in its discretion, would decline to exercise jurisdiction over the remaining state claims.   *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).[5]

_____

[5]Further, all claims against court-appointed foreclosure Commissioner Kometani are barred by the doctrine of quasi-judicial immunity.   A court-appointed foreclosure commissioner acts as an arm of the court and serves a function that is essential to the judicial process.   *See New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298 (9th Cir. 1989) (state court-appointed receivers are entitled to absolute immunity); *Stevens v. Cate*, 2012 WL 3962490 (E.D. Cal. Sept. 10, 2012) (court-appointed receivers are entitled to quasi-judicial immunity because their decisions are functionally equivalent to those of a judge involving the exercise of discretion).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court dismisses this action with prejudice.

The following motions are granted: Porter McGuire Kiakona & Chow, LLP's

Motion To Dismiss First Amended Complaint (Dkt. No. 23) and related joinders

(Dkt. Nos. 42, 80); James S. Kometani's Motion To Dismiss First Amended

Complaint With Prejudice (Dkt. No. 27) and related joinders (Dkt. Nos. 29, 41, 45,

79); First Hawaiian Bank and Watanabe Ing LLP's Motion to Dismiss (Dkt. No. 32)

and related joinder (Dkt. No. 81); and Milton M. Motooka and Motooka Yamamoto

& Revere, LLP's Motion to Dismiss (Dkt. No. 51).

The Clerk's Office is directed to close the case.

IT IS SO ORDERED.

DATED: October 28, 2016 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

Sakuma v. AOAO The Tropics at Waikele, et al.; CV 16-00274 DKW-KJM; **ORDER GRANTING (1) PORTER MCGUIRE KIAKONA & CHOW, LLP'S MOTION TO DISMISS; (2) JAMES S. KOMETANI'S MOTION TO DISMISS; (3) FIRST HAWAIIAN BANK AND WATANABE ING LLP'S MOTION TO DISMISS; AND (4) MILTON M. MOTOOKA, MOTOOKA YAMAMOTO & REVERE, LLP'S MOTION TO DISMISS**